IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STEEL, PAPER AND     :
FORESTRY, RUBBER,     :
MANUFACTURING, ENERGY,     :
ALLIED INDUSTRIAL AND SERVICE     :
WORKERS INTERNATIONAL UNION,     :
AFL-CIO/CLC, *et al.*,     :
    :
        Plaintiffs,     :     Case No. 2:24-cv-01213
    :
        v.     :     Judge Algenon L. Marbley
    :     Magistrate Judge Kimberly A. Jolson
OWENS CORNING INSULATING     :
SYSTEMS, LLC,     :
    :
        Defendant.     :

## OPINION & ORDER

This matter comes before this Court on Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC and United Steelworkers Local 244M's Motion for Summary Judgment (ECF No. 21) and Defendant Owens Corning Insulating Systems, LLC's Motion to Dismiss Under Rule 12(b)(1) or Alternatively for Summary Judgment (ECF No. 22). The parties appeared before this Court for oral argument on their respective motions on August 4, 2025. For the reasons stated below, this Court **GRANTS** Plaintiffs' Motion (ECF No. 21) and **DENIES** Defendant's Motion (ECF No. 22).

## I. BACKGROUND

### A. The Arbitration Award

Defendant Owens Corning Insulating Systems, LLC ("Owens Corning") and Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service

Workers International Union, AFL-CIO/CLC and United Steelworkers Local 244M (together, the "Union") are parties to a collective bargaining agreement covering employees at Owens Corning's Newark, Ohio facility. (Collective Bargaining Agreement, ECF No. 1-1). The agreement has a grievance and arbitration procedure. (*Id.* at 22–25). The agreement also includes an addendum on "flexibility and efficiency." (*Id.* at 57). This addendum states that "bargaining unit employees may assist other employees and perform duties in other classifications within their departments or in other departments in which they are capable" and that "employees will continue to perform their assigned classification for the majority of time[.]" (*Id.*).

The Union and Owens Corning had a "longstanding" disagreement over whether Owens Corning could require employees to perform "double duty," where an "employee takes on the full duties of a second job while also performing their own underlying job duties." (Award and Opinion, ECF No. 1-3, 7, 14). The parties took this dispute to arbitration pursuant to the grievance and arbitration process. (*See generally id.*).

The arbitrator held a hearing and issued an Award and Opinion. (*Id.* at 2). The arbitrator found that the plain language of the addendum does not allow for "double duty." (*Id.* at 14–16). The arbitrator rejected Owens Corning's argument based on other contract language permitting reassignments. (*Id.*). In addition to the plain meaning of the contract and its addendum, the arbitrator found that "the testimony and evidence convincingly demonstrate that the parties never had a meeting of the minds to permit or condone 'double duty.'" (*Id.* at 15).

The Award upheld the grievance. (*Id.* at 16). The Award states that Owens Corning "violated the 'Flexibility and Efficiency' language in the parties' collective bargaining agreement by requiring and directing employees to perform 'double duty.'" (*Id.*). As its sole remedy, the

Award directs Owens Corning "to immediately cease and desist from requiring or compelling employees to perform 'double duty.'" (*Id.*).

## B. Events Following the Award

The Award did not end the disagreement over double duty. After the Award, Owens Corning instituted "check sheets" for employees to track the duties performed on each shift and ensure that no double duty occurred. (Dittrich Decl., ECF No. 22-2, ¶ 4). According to the Union, however, Owens Corning continued to require employees to perform double duty. (Ashcraft Decl., ECF No. 21-1, ¶ 10). The Union then filed numerous grievances about the double duty issue. (Dittrich Decl., ECF No. 22-2, ¶ 6) (more than 200); (Ashcraft Decl., ECF No. 21-1, ¶ 12) (well over 100)). None has been submitted to arbitration.[1] (Dittrich Decl., ECF No. 22-2, ¶ 13).

The Union brought this lawsuit to enforce the Award. (Compl., ECF No. 1). In the Complaint's prayer for relief, the Union asks this Court to enter an order "[d]eclaring the Award final and binding" and "[e]nforcing the Award in full including but not limited to the remedy stated in the Award and compel the Defendant to 'immediately cease and desist from requiring or compelling employees to perform 'double duty.'" (*Id.* ¶ 21–22).

## C. The Parties' Motions

The Union moved for summary judgment. (ECF No. 21). In its Motion, the Union asks this Court to: (1) declare the Award final and binding; and (2) order Owens Corning to comply with the Award's directive "to immediately cease and desist from requiring or compelling employees to perform 'double duty.'" (Union Mem., ECF No. 21, 5). Owens Corning opposed the Union's Motion (ECF No. 25), and the Union replied (ECF No. 27).

---

[1] At oral argument, the Union indicated that the post-Award grievances have reached the step before arbitration, but have been held in abeyance.

Owens Corning then moved to dismiss for lack of jurisdiction, or in the alternative, for summary judgment. (ECF No. 22). The Union opposed (ECF No. 24), and Owens Corning replied (ECF No. 26). In its Motion, Owens Corning argues that the Union failed to exhaust the grievance process and that the Union's interpretation of the Award is unenforceable. As a threshold matter, though Owens Corning purports to raise the exhaustion issue under Rule 12(b)(1), the issue is not jurisdictional. *Teamsters Loc. Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014) (holding that failure to exhaust is a 12(b)(6) issue). Rather, if the Union ought to have exhausted the grievance process before filing suit, the Union has failed to state a claim for breach of the collective bargaining agreement. *Id.* This Court looks past the mislabeling and addresses the issue as if raised under Rule 12(b)(6). *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010). But, because Owens Corning relies on affidavits and other matters outside the pleadings, this Court treats Owens Corning's Motion as one for summary judgment. Fed. R. Civ. P. 12(d); *see also Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court thus asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). Ultimately, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,'

that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Said differently, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," but evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-50.

The party seeking summary judgment carries the initial burden of presenting the court with law and argument in support of its motion, as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, then the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 250.

Importantly, at the summary judgment stage, the court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Accordingly, at this stage in the litigation, the court must accept the plaintiff's version of events without weighing the evidence or assessing the credibility of prospective witnesses. *Cordell v. McKinney*, 759 F.3d 573, 578 (6th Cir. 2014). But, "[t]he mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the

non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citation omitted). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (internal quotation marks and citation omitted). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Id.*

## III.   LAW AND ANALYSIS

The Union brings this action to enforce a labor arbitration award under the Labor-Management Relations Act, 29 U.S.C. § 185. The Act provides jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization[.]" 29 U.S.C. § 185(a). This jurisdictional grant covers suits to enforce arbitration awards. *Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022) (it is "well-established that the LMRA authorizes courts to enforce or vacate labor arbitration awards"); *see also United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 595–96 (1960) (exercising jurisdiction over suit to enforce (or confirm) award).

Federal courts conduct only a limited review of labor arbitration awards. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960). An award is legitimate "so long as it draws its essence from the collective bargaining agreement" rather than reflecting the arbitrator's "own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597. A court may not overturn an arbitrator's award "as long as the arbitrator is even arguably construing or applying the contract" and acting within his or her authority, even if the court is "convinced [the arbitrator] committed serious error[.]" *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S.

29, 38 (1987). When "an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *Misco*, 484 U.S. at 39).

Following *Misco* and *Garvey*, the Sixth Circuit set forth a three-part test to determine whether a labor arbitration award "draws its essence from the contract" and therefore must be enforced. *Michigan Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 752–53 (6th Cir. 2007) (quoting *Misco*, 484 U.S. at 38). *Michigan Family Resources* "refined the scope of judicial review over labor-arbitration awards" to ensure that courts "will only consider the questions of 'procedural aberration' outlined by the Supreme Court in [*Misco*], and [*Garvey*]." *Truck Drivers Loc. No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 216 (6th Cir. 2008). Under this test, an arbitration award must be enforced if: (1) the arbitrator did not act outside his or her authority; (2) the arbitrator did not "commit fraud, have a conflict of interest or otherwise act dishonestly"; and (3) the arbitrator "arguably constru[ed] or appl[ied] the contract." *Michigan Fam. Res.*, 475 F.3d at 753.

Further, the Sixth Circuit has made clear that "[a]n arbitrator has broad discretion in formulating remedies." *AK Steel Corp. v. United Steelworkers of Am.*, 163 F.3d 403, 409 (6th Cir. 1998) (citing *Misco*, 484 U.S. at 38). A remedy will be upheld "if the language of the arbitrable contract is not explicit enough to bar the arbitrator's chosen remedy[.]" *Id*. Under *Michigan Family Resources*, courts analyze an arbitrator's choice of remedy like any other interpretative decision: the remedy must be enforced unless "the arbitrator was not arguably construing or applying the contract." *Truck Drivers*, 512 F.3d at 217. Where the arbitrator has arguably construed the contract, found a violation of the collective bargaining agreement, and issued an

7

award—including an award containing prospective relief, the district court "essentially ha[s] one role—'to place government authority behind an award in order to enforce it.'" *AK Steel*, 163 F.3d at 410 (quoting *Armco*, 65 F.3d at 496).

Here, there is no dispute that the Award satisfies the *Michigan Family Resources* three-part test. First, the arbitrator acted within the scope of his authority; there is no dispute that the collective bargaining agreement committed the grievance to arbitration before this arbitrator. *Michigan Fam. Res.*, 475 F.3d at 754. Second, there is no indication that the arbitrator committed fraud, had a conflict of interest, or acted dishonestly. Finally, the arbitrator's opinion "has all the hallmarks of interpretation." *Id.* The arbitrator "refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does he say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Id.* The arbitrator analyzed the "flexibility and efficiency" language and found that its plain meaning did not allow "double duty." The arbitrator found that other language in the contract, such as provisions allowing reassignments, did not change his interpretation. The arbitrator looked to the "entire history" of the dispute and of the parties' negotiations and determined that "aside from the clear contract language as hereinbefore stated, there was never an agreement based on the contract language at issue to allow for so-called 'double duty.'" (Award and Opinion, ECF No. 1-3, 16). The arbitrator then ordered Owens Corning "to immediately cease and desist from requiring or compelling employees to perform 'double duty.'" (*Id.*).

Owens Corning does not contest any of the *Michigan Family Resources* elements. Nor does Owens Corning contest that the arbitrator could order prospective relief. Rather, Owens Corning contends that the Union is attempting to litigate the merits of post-Award grievances that

must be resolved through arbitration and that, in any event, the Union cannot show that that Owens Corning has violated the Award.

The Union denies that it seeks to litigate the post-Award grievances. Though the Union contends that Owens Corning has violated the Award, at oral argument, the Union confirmed that it does not seek any additional remedy based on these alleged violations and that it raises post-Award violations to show that there is a live controversy. The Union only seeks an order declaring the Award final and binding and ordering Owens Corning to comply with the Award's directive "to immediately cease and desist from requiring or compelling employees to perform 'double duty.'" (Union Mem., ECF No. 21 at 5).

### A. This Court Need Not Determine Whether Owens Corning Violated the Award to Enforce the Award by Ordering Compliance with the Award's Directive.

The Union's request—that this Court to declare the Award final and binding and order Owens Corning to comply with the Award's prospective relief—is simply a request to enforce (or confirm) the Award by converting it to a judgment. *See Marion Mfg. Co. v. Long*, 588 F.2d 538, 541 (6th Cir. 1978) (holding that confirmation requires entering judgment encapsulating the award as of date of award). Courts use the terms "confirm" and "enforce" interchangeably. *See Greenhouse Holdings*, 43 F.4th at 631 (citing *Enterprise Wheel*, 363 U.S. at 595–96). "Confirm" comes from the Federal Arbitration Act. Confirmation converts the award into a judgment. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) ("Because arbitration awards are not self-enforcing, they must be given force and effect by being converted to judicial orders by courts" through an order confirming the award in whole or in part). Conversion to a judgment "place[s] government authority behind an award in order to enforce it." *See Armco*, 63 F.3d at 496; *see also Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 596 (7th Cir. 2017) ("Confirmation of an arbitration award places the weight of a court's contempt power behind the award"). Confirmation

of an arbitration award with injunctive relief entails entering a judgment with the same injunctive relief found in the award. *See Singh Mgmt. Co., LLC v. Singh Dev. Co., Inc.*, 774 F. App'x 921, 925 (6th Cir. 2019).

Because the Union does not seek a remedy beyond the injunctive relief found in the Award, this Court must "neither [] determine whether there was a violation of the Agreement nor [] fashion a remedy." *AK Steel*, 163 F.3d at 410. "That [Owens Corning] continued to violate the [] Agreement after the arbitrator issued his award" only "makes all the more compelling the point that the district court should [] rush[] 'to place government authority behind an award in order to enforce it.'" *AK Steel*, 163 F.3d at 410 (quoting *Armco*, 65 F.3d at 496).

The Union nonetheless analyzes whether Owens Corning's subsequent conduct violated the Award under the "material factual identity" test in *Oil, Chemical & Atomic Workers International Union v. Ethyl Corporation*, 644 F.2d 1044, 1051 (5th Cir. 1981). But again, because the remedy sought here does not hinge on whether Owens Corning has violated the Award, this Court need not evaluate Owens Corning's post-Award conduct to "distinguish an actual failure to comply with an award, which [this Court] is empowered to remedy, from, for example, a response whose adequacy in compliance with an award is ambiguous, and where the arbitrator must first make a decision." *Armco*, 65 F.3d at 498. Accordingly, the instant case is unlike cases that apply the "material factual identity" test to make that distinction, such as *Ethyl* itself and *American Postal Workers Union v. U.S. Postal Service*, No. 09-10856, 2009 WL 2410573 (E.D. Mich. Aug. 4, 2009).

In *Ethyl*, the union and the employer went to arbitration over the employer's use of a supervisor in the railway area to perform hourly-rated work. 644 F.2d at 1047. The arbitrator found the employer violated the collective bargaining agreement and ordered "that hereinafter [the

employer] desist from like violations." *Id.* (quoting arbitration award). Years later, the employer began to use supervisors in the sodium area to perform hourly-rated work. The union sued to enforce the award. The union sought damages based on post-award violations and injunctive relief including a preliminary injunction "enjoining Ethyl from placing supervisors in hourly-rated jobs in the sodium area." *Id.* at 1047 n.5; *see also Oil, Chem. & Atomic Workers Int'l Union, Loc. No. 4-16000 v. Ethyl Corp.*, 479 F. Supp. 953, 954 (S.D. Tex. 1979), rev'd, 644 F.2d 1044 (5th Cir. 1981). The requested relief—damages and an injunction against using supervisors for hourly-rated work in the sodium area—required the court to determine whether the employer violated the award's prohibition on "like violations" by using supervisors in that manner. To do so, the Fifth Circuit employed a burden-shifting framework to assess whether the current dispute had "material factual identity" with the prior dispute. *Ethyl*, 644 F.2d at 1051–55. Under this framework, the union must establish that the conduct at issue "inarguably falls within the prohibition that was subject of the previous award." *Id.* The burden then shifts to the employer to establish an exception. *Id.* The Fifth Circuit sought "merely . . . to delineate a test by which a court can identify whether the relief sought in a given suit would constitute expanding or enforcing a prior arbitration award." *Id.* at 1055 n.17.[2]

Similarly, in *American Postal Workers Union*, the arbitrator had found the employer had violated the contract by using letter carriers to perform clerk work at one facility and ordered the

---

[2] The Union states that the Sixth Circuit adopted this test in *United Paperworkers International Union Local 1206 v. Georgia Pacific Corporation, Gypsum Division*, 798 F.2d 172, 173 (6th Cir. 1986). But there is conflicting case law as to whether the Sixth Circuit has done so. *Compare Loc. Union 1785, United Mine Workers of Am. v. Quarto Min. Co.*, 848 F.2d 192 (6th Cir. May 4, 1988) (unpublished) ("This court adopted the Fifth Circuit's test") (citing *Georgia Pacific*, 798 F.2d at 173) *with Teamsters Loc. Union No. 436 v. J.M. Smucker Co.*, 541 F. App'x 529, 535 (6th Cir. 2013) (stating that the Sixth Circuit has "explicitly declined to adopt the 'material factual identity' test," but discussing res judicata rather than prospective application) (citing *Int'l Union v. Dana Corp.*, 278 F.3d 548, 555–56 (6th Cir. 2002)).

employer to "cease and desist from using [the] employees on a daily basis as heretofore used." 2009 WL 2410573, at *1. After the award, the employer notified clerks at other facilities that they would be laid off or re-assigned. *Id.* at *2. The union sued, seeking to enforce the award and seeking an order preventing the employer from laying off or reassigning clerks at the other facilities until all letter carriers at those facilities had ceased performing clerk work. *Id.* Similar to *Ethyl*, the requested relief required the court to determine whether the award's prohibition on using employees "as heretofore used" applied to the current dispute. The district court found that the prospective relief contained in the award covered only the original facility. The court declined to apply the award prospectively to other facilities, holding that an arbitrator must make that determination. *Id.* at *7–8.

The courts in *Ethyl* and *American Postal Workers Union* addressed prior arbitration awards with prospective relief barring similar future violations. And, in those cases, the unions sought relief that necessarily required a determination that the ongoing conduct violated the prior awards—injunctions barring specific conduct that the unions contended fell in the awards' respective prohibitions on similar violations. Here, by contrast, the Award's cease and desist order does not define the prohibited conduct in reference to the prior violations. And the Union seeks nothing more than an order requiring Owens Corning to comply with the Award's order. This is a request to enforce an award containing prospective relief, not a request to enforce prospectively a prior award.

The Seventh Circuit's decision in *Unite Here Local 1 v. Hyatt Corporation* illustrates this distinction. In *Hyatt*, the union requested that the court enforce two arbitration awards with forward-looking orders requiring the employer "cease and desist" from violations of a specific contract provision. 862 F.3d at 596. Though the union asserted that the employer had violated the

12

awards and continued to violate the collective bargaining agreement, the union did not seek any additional remedy based on those violations (nor did the court determine whether those violations had occurred). *Id.* The union's request did not equate to one for prospective enforcement of a prior award, where the party "is typically asking the court to apply the arbitrator's holding to a later dispute that has not been submitted to arbitration" and seeking "entry of declaratory or injunctive relief that dictates the resolution of the new dispute in harmony with the arbitrator's prior ruling." *Id.* Rather, "the union [was] simply seeking to confirm prospective relief that it ha[d] already litigated and obtained from two arbitrators." *Id.* at 603.

Here, the Union asks this Court to declare the Award final and binding and to order Owens Corning to comply with the directive in the Award "to immediately cease and desist from requiring or compelling employees to perform 'double duty.'" (Award and Opinion, ECF No. 1-3, 16). The relief requested here does not require this Court to apply the Award prospectively to a later dispute. True, "[t]his case differs from the usual proceeding seeking to confirm or vacate an arbitration award in that it involves [an] award[] ordering open-ended prospective relief, as opposed to backward-looking make-whole relief, such as an award of lost wages, or finite forward-looking relief, such as the reinstatement of an employee whom the arbitrator has found to have been wrongfully discharged[.]" *Hyatt*, 862 F.3d at 596 (citations omitted). But this difference is in the remedy that the arbitrator ordered. In other words, "the union is simply seeking to confirm prospective relief that it has already litigated and obtained from [the] arbitrator[]." *Id.* at 603.

### B. Owens Corning's Other Arguments

In its Motion and in response to the Union's Motion, Owens Corning also argues that: (1) the Union improperly seeks to litigate post-Award grievances without exhausting the contractual grievance and arbitration process; (2) that an arbitrator must determine the arbitrability of those

grievances; (3) the Union's interpretation of the Award is unenforceable; and (4) that the Union cannot show that Owens Corning has violated the Award.

As discussed above, the post-Award grievances are not at issue, so whether the Union has exhausted the grievance and arbitration process for those grievances has no bearing here. There is no dispute that the Union exhausted the grievance and arbitration process for the violations that led to the Award. Similarly, the arbitrability of the post-Award grievances is not at issue. *Local Union 1785, United Mine Workers of America v. Quarto Mining Co.*, where the court dismissed the action because the parties had agreed to arbitrate the res judicata effect of prior awards, is inapposite because the award in that case did not contain prospective relief. 848 F.2d 192, 192 (6th Cir. May 4, 1988) (unpublished). Finally, the Union does not ask this Court to adopt its interpretation of the Award. As discussed above, the Union only asks this Court to order Owens Corning to comply with the arbitrator's order.

\*\*\*

The Award is valid under *Michigan Family Services* and must be enforced. The Union's request that this Court order Owens Corning to comply with the Award's order asks for nothing more. Accordingly, this Court's role is "to place government authority behind [the] award in order to enforce it." *AK Steel*, 163 F.3d at 410 (quoting *Armco*, 65 F.3d at 496).

This Court cautions that it has not determined whether Owens Corning's alleged post-Award conduct would violate the Award. Nor has this Court determined whether it could make that determination if the Union were to seek relief in this Court based on future alleged violations of the Award (and of this Court's order to comply with the Award). This Court first would need to "distinguish an actual failure to comply with an award, which it is empowered to remedy, from, for example, a response whose adequacy in compliance with an award is ambiguous, and where

14

the arbitrator must first make a decision." *Armco*, 65 F.3d at 498.

### IV.  CONCLUSION.

For the foregoing reasons, this Court **GRANTS** the Union's Motion for Summary Judgment (ECF No. 21).  This Court **DENIES** Owens Corning's Motion to Dismiss Under Rule 12(b)(1) or Alternatively for Summary Judgment (ECF No. 22).

This Court **DECLARES** the arbitrator's Award final and binding.  This Court **ORDERS** Owens Corning to comply with the Award's order "to immediately cease and desist from requiring or compelling employees to perform 'double duty.'"

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  August _14_, 2025**